BOLTON, administrator, &c. *appellant, vs.* SMEAD and others, *respondents.*

On the settlement of the accounts of an administrator, before the surrogate, in 1861, the administrator offered himself as a witness to show what took place between himself and his intestate in reference to the making of a note, and to show that he signed the note at the request and for the benefit of the intestate, as his surety. *Held* that under the law as it then existed, previous to the amendment of section 399 of the code, in 1862, he was a competent witness.

THIS was an appeal from a decree of the surrogate of the county of Livingston, made on the final settlement of the accounts of the appellant as administrator of &c. of Allen Smead, deceased. On the accounting the administrator presented, as a claim, an account of $1186.52, for money paid by him on a judgment recovered against himself and Lyman H. Smead, which was obtained on a note executed by the deceased, in his lifetime, and by the appellant and Lyman H. Smead. The appellant claimed that he executed the note for the benefit and at the request of the deceased, and that the execution of the note by Lyman H. Smead was an act long subsequent, procured by the deceased and the payee, without the knowledge or consent of the appellant. The heirs contested the claim, and alleged that the note was exe-

cuted by the deceased and the appellant as surety for Lyman H. Smead.  The administrator offered himself as a witness to show what took place between himself and the deceased in reference to making the note, and to show that he signed the same at the request of and for the benefit of the intestate. The testimony was objected to by the heirs, and excluded. One half of the claim was rejected by the surrogate, and disallowed.

*F. G. Wicker,* for the appellant.

*McNiel Seymour,* for the respondents.

*By the Court,* WELLES, J.   The objection that the surrogate should have allowed the appellant to testify in his own behalf as to what took place between him and the intestate, in reference to making the note in question, &c., must be determined upon the law as it existed at the time of the hearing before the surrogate, which was in June, 1861.   At that time the exception in section 399 of the code, bearing upon the question, was as follows : " except that a party shall not be examined against parties who are representatives of a deceased person, in respect to any transactions had personally between the deceased and the witness."   The evidence offered and excluded was not offered and would not have operated against a party who was the representative of a deceased person.   The only party in the case who sustained that relation was the appellant himself, and therefore the exception in the section did not apply to him, unless the singular ground can be maintained that the testimony was offered by the appellant against himself in his representative, character, which it seems to me was not within the contemplation of the legislature.   This view derives strength from the fact that the legislature of 1862 amended the 399th section of the code so as to adapt it to precisely such a case as the present.

If my brethren concur with me in the foregoing, it will be useless to consider the other points raised; as, in case of a new trial, the evidence offered would be inadmissible, under the last amendment, and the appellant would have to rely on other evidence to establish his claim.

The decree of the surrogate should be reversed, and the proceedings remitted to the surrogate for a new rehearing.

[MONROE GENERAL TERM, September 1, 1862. *Johnson, J. C. Smith* and *Welles*, Justices.]